IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jerry Elmore Nexsen, | ) | C/A No. 0:14-4420-RBH-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Jerry Elmore Nexsen, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    whether the claimant has a "severe" impairment;

(3)    whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)    whether the claimant can perform his past relevant work; and

(5)    whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## ADMINISTRATIVE PROCEEDINGS

In March 2011, Nexsen applied for DIB, alleging disability beginning November 22, 2008.  Nexsen's application was denied initially and upon reconsideration, and he requested a hearing

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 404.1520(h).



before an administrative law judge ("ALJ").  A hearing was held on June 14, 2013, at which Nexsen, who was represented by Nelson R. Parker, Esquire, appeared and testified.  During the hearing, Nexsen amended his alleged onset date to December 1, 2010.  After hearing testimony from a vocational expert, the ALJ issued a decision on October 1, 2013 finding that Nexsen was not disabled.  (Tr. 11-20.)

Nexsen was born in 1954 and was fifty-six years old on December 1, 2010—the amended alleged disability onset date.  (Tr. 138.)  He has a ninth-grade education and has past relevant work experience as an electrician.  (Tr. 166.)  Nexsen alleged disability due to diabetes, bursitis, vision loss in one eye, and a cataract developing on the other eye.  (Tr. 165.)

In applying the five-step sequential process, the ALJ found that Nexsen had not engaged in substantial gainful activity since December 1, 2010—the amended alleged onset date.  The ALJ also determined that Nexsen's diabetes mellitus was a severe impairment.  However, the ALJ found that Nexsen did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings").  The ALJ further found that Nexsen retained the residual functional capacity to

> perform the full range of medium work as defined in 20 CFR 404.1567(c).  The claimant is able to occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, stand/walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and has unlimited ability to push and pull including operation of hand and/or foot controls.

(Tr. 14.)  The ALJ found that Nexsen was capable of performing past relevant work as an electrician, DOT #824.261-010, medium exertional work with an SVP of 7 (skilled), and that this work did not require the performance of work-related activities precluded by Nexsen's residual functional capacity.  Therefore, the ALJ found that Nexsen was not disabled from December 1, 2010 through the date of her decision.



Nexsen submitted additional evidence to the Appeals Council, which denied Nexsen's request for review on September 11, 2014, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

## ISSUES

Nexsen raises the following issues for this judicial review:

I.    The Plaintiff has severe impairments that were not properly considered by the ALJ[.]

II.    The ALJ failed to properly assess treating opinion evidence[.]

III.    The ALJ failed to properly evaluate the credibility of the Plaintiff.

(Pl.'s Br., ECF No. 15.)

## DISCUSSION

### A.    Impairments

Nexsen first argues that the ALJ erred at Step Two of the sequential evaluation process in failing to find that Nexsen had severe impairments in addition to his diabetes mellitus. Specifically, Nexsen argues that the ALJ should have found a severe visual impairment and a severe impairment stemming from his arthritis or peripheral neuropathy. Nexsen further argues that the ALJ erred in failing to include any limitations stemming from his visual impairment in the residual functional capacity assessment and hypothetical question presented to the vocational expert.

### 1.    Step Two

Step Two of the sequential evaluation requires the ALJ to "consider the medical severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). The claimant bears the burden at this step to show that he has a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs." Examples of these include:

(1)    Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2)    Capacities for seeing, hearing, and speaking;
(3)    Understanding, carrying out, and remembering simple instructions;
(4)    Use of judgment;
(5)    Responding appropriately to supervision, co-workers and usual work situations; and
(6)    Dealing with changes in a routine work setting.



20 C.F.R. § 404.1521(b). "[A]n impairment can be considered as not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original) (internal quotation marks omitted).

The ALJ stated that Nexsen alleged impairments of peripheral neuropathy, prosthetic right eye, and vision loss in the left eye. However, the ALJ found that the allegations produced no more than minimal limitations upon Nexsen's ability to perform work-related activities.

 The ALJ found that Nexsen had a prosthetic right eye, also observing that one report indicated that Nexsen has had the prosthesis since an injury in the early 1990s while another report indicates that Nexsen had an enucleation of his right eye for trauma at age three. The ALJ further stated that Nexsen reported in May 2011 that "his only problem with his left eye was occasional blurriness when his blood sugars were elevated" and that he had no problems with his vision when wearing glasses. (Tr. 14.) The ALJ found that Nexsen's last vision examination was in May 2010, at which time the vision in Nexsen's left eye was 20/50 uncorrected and 20/20 corrected. Nexsen stated he was told at that time that he had a cataract forming in his left eye but he did not require surgery. Further, the ALJ stated that a September 2011 examination revealed Nexsen's visual acuity was 20/25 in the left eye, and he was noted as having a small cataract in the left eye. The ALJ found that Nexsen was able to drive, read, shop, use the telephone, watch television, and read mail and that Nexsen stated he was unable to read for periods of more than an hour due to his eye getting tired.

The ALJ further found that the medical records revealed complaints by Nexsen of peripheral neuropathy. However, the ALJ found that there were no laboratory or objective medical records to support Nexsen's allegation. The ALJ observed that during a September 2011 comprehensive



medical examination, Nexsen had no sensory or motor deficits in any of his extremities, normal and equal fine motor and gross motor skills in both hands, and no difficulty unhooking and hooking his belt. The ALJ also stated that in February 2013, Nexsen "complained of fairly significant pins and needles sensation in his legs and feet," but on examination, Nexsen "had no ulcers, sores or calluses on his feet and no sensory testing appeared to be performed at this time." (Tr. 14.) Thus, the ALJ found that Nexsen was diagnosed with peripheral neuropathy based solely on his subjective complaints.

Nexsen has failed to provide any support for his general assertions of error at Step Two, and has failed to demonstrate that the ALJ's findings at this Step are unsupported or controlled by an error of law. Moreover, the court finds that even if the ALJ erred at Step Two, Nexsen has failed to demonstrate any harm from this error. See Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."); Washington v. Astrue, 698 F. Supp. 2d 562, 580 (D.S.C. 2010) (adopting Report and Recommendation that included a collection of cases and finding "no reversible error where the ALJ does not find an impairment severe at step two provided that he or she considers that impairment in subsequent steps").

## 2.    Residual Functional Capacity

A claimant's residual functional capacity is "the most [a claimant] can still do despite [his] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1). In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). Social Security Ruling 96-8p

further requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's residual functional capacity.

Nexsen submits that the ALJ erred in failing to include any limitations from his visual impairments in his residual functional capacity, pointing to the fact that Nexsen has no vision in his right eye, that he has visual acuity of 20/50 in his left eye (without corrective lenses), the existence of a cataract in his left eye, and Nexsen's testimony at the hearing of blurriness and deterioration of vision in his left eye. However, the ALJ clearly considered all of these allegations in the decision in finding no limitation from Nexsen's visual impairment. Further, the ALJ observed that although Nexsen has a prosthetic right eye, he lost this eye at the age of three and has a long history of past relevant work as an electrician. Nexsen suggests that one may assume visual impairments relating to depth perception and near acuity as a result of his visual impairments; however, Nexsen fails to point to any evidence that would support the inclusion of such limitations.[2] Cf. Mills v. Astrue, C/A No. 2:10-1657-CMC, 2011 WL 3840989, at *2 (D.S.C. Aug. 26, 2011) (rejecting plaintiff's arguments that both the RFC and the hypothetical question should have included visual limitations such as "no depth perception" or "no work requiring binocular vision" where the ALJ found the plaintiff's right eye vision loss was a severe impairment, the ALJ's decision reflected that he

---

[2] Nexsen points out that the hearing transcript does not support the ALJ's statement that "[t]he vocational expert testified that while a deficit in depth perception is normally associated with one eye blindness, because the claimant has a long work history and drives, 'it is unusual but not unreasonable' to determine that he is not limited by a deficit of depth perception." (Tr. 18.) Rather, the hearing transcript reflects that the ALJ presented this line of questioning to the vocational expert and Nexsen's counsel and indicates that Nexsen's counsel, rather than the vocational expert, suggested "unusual, but not unreasonable" and agreed with the ALJ when she restated that characterization. (Tr. 48-49.) Notwithstanding this apparent misstatement by the ALJ, Nexsen has failed to demonstrate that the ALJ's residual functional capacity assessment is unsupported. In fact, this testimony appears to reflect that Nexsen's counsel agreed that Nexsen's visual impairments did not prevent him from performing his prior work.



considered the plaintiff's vision loss in determining the plaintiff's residual functional capacity, and the record contained no information from any treating source or any consulting physician identifying any specific functional limitations the plaintiff suffered as a result of his vision impairment).

Nexsen also argues that the ALJ erred in failing to include any limitations from his alleged neuropathy or arthritis, pointing to records he alleges indicate "arthritic pain in his joints with crepitus on range of motion of his knees and shoulders" and show he was taking a medication for arthritis; an opinion (which the ALJ discounted and is addressed below) suggesting limitations from pain with movement from Nexsen's joints; and a record noting "arthritic changes in the joints, crepitus of joints on range of motion, parathesias, and positive Tinel's sign bilaterally." (Pl.'s Br. at 19, ECF No. 15 at 19.) However, the ALJ's decision reflects that she considered these records as well as records indicating normal objective medical examinations in September 2010 and January 2011. The ALJ found that Nexsen had minimal complaints and controlled symptomology in subsequent treatment records. In a September 2011 consultative medical examination, although Nexsen reported pain in his elbows, shoulders, knees, and ankles and believed he had arthritis or bursitis, he had not had any x-rays of these joints; was able to get on and off the examination table without difficulty by himself; had full range of motion of the cervical spine with no tenderness to palpitation of the neck and full range of motion of all joints in all four extremities; and had no tenderness to palpitation of any joints, no swelling, no inflamation, and no deformity. The ALJ further stated that during this examination the doctor found an x-ray of the bilateral knees showed minimal medial joint space narrowing, that there were no sensory or motor deficits in any extremity and no pedal edema in either lower extremity, grip strength and gait was normal, and straight leg raises were negative. (Tr. 16.)



Therefore, although Nexsen may be able to point to selective records in support of his position, the court finds that Nexsen has failed to demonstrate any error by the ALJ or that the ALJ's residual functional capacity assessment is unsupported by substantial evidence. Moreover, Nexsen has similarly failed to demonstrate any error with regard to the hypothetical question presented to the vocational expert, as his arguments hinge on the allegations of error in the residual functional capacity assessment.

**B.    Treating Physician**

Nexsen next argues that the ALJ erred in evaluating opinion evidence from Dr. Robert S. Eagerton, Jr., Nexsen's treating physician. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).



Additionally, SSR 96-2p provides that a finding that

> a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. at *5.

On May 31, 2013, Dr. Eagerton completed a medical source statement, indicating that Nexsen could lift and carry fifty pounds occasionally and twenty-five pounds frequently, could stand and walk two hours in an eight-hour day and sit two hours in an eight-hour day, could sit for fifteen minutes before changing positions, stand for ten minutes before changing positions, and must walk around every fifteen minutes for five minutes. Dr. Eagerton responded "yes" when asked whether Nexsen would need the opportunity to shift at will from sitting or standing/walking and when asked whether Nexsen would need to lie down at unpredictable intervals during a workday. Dr. Eagerton stated this would happen two or three times per eight-hour shift. (Tr. 249-50.) When asked what medical findings supported these limitations, Dr. Eagerton stated: "No investigation such as imaging studies have been done secondary to lack of insurance. Patient does have arthritic joint changes on exam." (Tr. 250.) Dr. Eagerton further checked boxes indicating that Nexsen could occasionally twist, bend, and climb stairs and never crouch or climb ladders. Dr. Eagerton indicated that

Nexsen's reaching, handling, fingering, feeling, and pushing/pulling were affected by Nexsen's impairments. Specifically, Dr. Eagerton stated "[l]ack of sensation in hands, increased with pushing, pulling, [and] reaching" and cited arthritic changes in Nexsen's joints and carpal tunnel syndrome in support of these statements. (Id.) Dr. Eagerton checked boxes indicated that Nexsen should avoid concentrated exposure to extreme cold; extreme heat; wetness; humidity; fumes, odors, dusts, gases, poor ventilation, etc.; and hazards. Dr. Eagerton stated that Nexsen becomes dizzy when climbing ladders, that he is at risk for falls, and does not tolerate temperature extremes. He opined that Nexsen's vision is impaired to the right, indicating his right eye is prosthetic. Finally, Dr. Eagerton indicated that Nexsen's impairments or treatment would cause him to be absent from work more than three times a month. (Tr. 251.)

After observing that Dr. Eagerton's statement described disabling limitations, the ALJ stated the following in evaluating this opinion:

> However, although I generally give weight to Dr. Eagerton's findings as a treating source, I specifically accept and give great weight to the medical source statement of Dr. Eagerton with regard to his opinions as to the claimant's ability for lifting and carrying. However, little to no weight is given the opinions regarding other limitations described, as Dr. Eagerton's own treatment records do not support the limitations and document claimant's non-compliance with treatment measures. Dr. Eagerton even concedes in his document that he has done no imaging or other diagnostic studies of the claimant. There are no objective medical records to support the opinion that claimant's ability to perform postural activities and gross and fine manipulations would be limited. His physical examinations have been within normal limits or showed only slight limitations not consistent with the limitations found by Dr. Eagerton. In other words, there is absolutely no basis to support the additional limitations found in the medical source statement of Dr. Eagerton.

(Tr. 17-18.)

Nexsen argues that the ALJ failed to consider Nexsen's financial situation when considering the lack of objective medical evidence and that the ALJ should have arranged for additional testing if she believed the opinion was not supported. Moreover, Nexsen contends that the observations by



Dr. Eagerton of arthritic changes and crepitus with movement are sufficient objective support for his opinion.

Upon review of the ALJ's decision and the record, the court concludes that the ALJ applied the relevant factors in evaluating Dr. Eagerton's opinion and finds that Nexsen has failed to demonstrate that the ALJ's decision to afford little to no weight to aspects of Dr. Eagerton's opinion is unsupported by substantial evidence or based on an incorrect application of the law. See 20 C.F.R. § 404.1527(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted).  In discussing Dr. Eagerton's opinion, the ALJ recognized that Dr. Eagerton is a treating physician but found that his opinions were not consistent with the record, including his own treatment notes.  Specifically, the ALJ observed that the "physical examinations have been within normal limits or showed only slight limitations not consistent with the limitations found by Dr. Eagerton." (Tr. 18.)  Other than the two treatment notes that Nexsen argues provides objective support for Dr. Eagerton's opinion because they suggesting crepitation in Nexsen's knees on range of motion (Tr. 248), as pointed out by the Commissioner, the remaining physical examinations indicated that Nexsen "was in no distress; was alert and oriented; had no edema and full range of motion in his extremities; full range of motion in his spine; intact sensation; no atrophy; no tenderness to palpation of his spine or paraspinous muscles; no tenderness to palpation in his joints; no swelling, inflammation or deformity; normal grip strength bilaterally; normal fine and gross motor skills in both hands; and a normal gait" and that knee x-rays revealed "only minimal medial joint space narrowing, but no other acute process." (Def.'s Br. at 24, ECF No. 17 at 24) (citing Tr. 218-220, 235, 236, 245, 248).

To the extent Nexsen argues that the ALJ erred in failing to develop the record by failing to order additional testing, the court observes that Nexsen was represented by counsel at his hearing before the ALJ.  Further, the ALJ "is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record," and Nexsen has failed to demonstrate that this record is incomplete.  Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994) (cited in Bell v. Charter, No. 95-1089, 1995 WL 347142, at *4 (4th Cir. 1995)); see also Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."); Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000) (requiring for a claimant to show prejudice from an ALJ's failure to develop the record, which requires demonstrating that he "could and would have adduced evidence that might have altered the result") (internal quotation marks and citations omitted).  Whether he is represented or not, the claimant bears the burden of proof, and he is responsible for providing evidence to support his application and demonstrate disability.  See 20 C.F.R. § 404.1512(a) & (c); 42 U.S.C. § 423(d)(5)(A).  The ALJ may order a consultative examination or tests if the agency "cannot get the information [it] needs from [the claimant's] medical sources," or  "to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on [the claimant's] claim."  20 C.F.R. 404.1519a.  Further, an ALJ may order additional examinations or tests if a claimant's "medical sources cannot or will not give [the Administration] sufficient medical evidence about [the claimant's] impairment for [the Administration] to determine whether [the claimant's is] disabled."  20 C.F.R. § 404.1517.  However, Nexsen has not alleged any difficulty in getting records from his treating sources or that the evidence regarding his impairments was inconsistent or insufficient to support a determination.  Instead, Nexsen's argument appears to rest on the notion that the ALJ

should have sought out additional objective evidence to support the opinion of Dr. Eagerton, which is not contemplated by the regulations.

In sum, the ALJ properly weighed Dr. Eagerton's opinion and reasonably found that the medical findings and observations in the record did not support Dr. Eagerton's opinion. Although Nexsen may be able to point to a medical record that arguably supports Dr. Eagerton's opinion, he has failed to demonstrate that the ALJ's findings are unsupported by substantial evidence. In fact, it is clear that the ALJ, as part of her duties in weighing the evidence, properly relied on medical evidence in making her residual functional capacity determination and resolving conflicts of evidence. Where, as here, the record contains conflicting medical evidence, it is the purview of the ALJ to consider and weigh the evidence, and resolve the conflict. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). For all of these reasons, the court finds that Nexsen has not shown that the ALJ's decision with regard to Dr. Eagerton's opinion evidence was unsupported by substantial evidence or reached through application of an incorrect legal standard.

## C.    Credibility

With regard to subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). It appears that in this

matter only the second step is at issue,[3] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges []he suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i)    Your daily activities;
(ii)   The location, duration, frequency, and intensity of your pain or other symptoms;
(iii)  Precipitating and aggravating factors;
(iv)   The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

---

[3] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



     (v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

     (vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

     (vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ summarized Nexsen's allegations as follows:

At the hearing, the claimant testified that he is married and lives with his wife. He has an adult child. His wife works. He has a driver's license and drives about every other day. He does not drink, smoke cigarettes or do drugs. He previously worked as an electrician. He testified that he takes oral medication for diabetes but is not on insulin. The claimant testified that the he has leg pain and numbness in the fingers and hands. He further complained of arthritis. He complained of having pain in the legs, feet, shoulders, elbows, wrists, and so forth. He reported having a prosthetic right eye and cataracts in the left eye.

An average day consists of having breakfast, and sometimes he helps his wife cook. He does no housework, no laundry, no yard work, and seldom grocery shops. He goes to church twice a week. He visits his mother. He can lift about 25 pounds, walk about a block and sit 10-15 minutes but shifts the whole time from pain.

(Tr. 15.)

The ALJ found that Nexsen's statements concerning the intensity, persistence, and limiting effects of the alleged symptoms were not substantiated by the total evidence and were not entirely credible based on the record in this case. In support of this finding, the ALJ observed that Nexsen amended his alleged onset date from November 2008 to December 2010, because he received unemployment benefits through November 2010. (Tr. 15.) The ALJ further found, after summarizing the medical evidence, that the medical evidence did not support the extent of Nexsen's allegations. (Tr. 15-16.) The ALJ specifically stated:

The medical records in evidence reflect the claimant underwent treatment to some degree for his severe impairment of diabetes mellitus. However, the record lacks the type of clinical and laboratory abnormalities one would expect to find of a completely



disabled individual and the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. In fact, many of the claimant's physical examinations were normal or showed only slight limitations. As previously stated, on March 17, 2010, the claimant reported feeling relatively well with controlled blood sugars (Exhibit 2F, page 6). On September 24, 2010, the claimant reported that his blood sugars had been under good control (Exhibit 2F, page 7). The claimant's laboratory and basic metabolic panels were normal, medications and treatment were rarely altered and he required minimal doctor visits in-between regularly scheduled quarterly appointments (Exhibit 2F). On April 13, 2011, the claimant denied having any problems or common symptoms associated with diabetes mellitus (Exhibit 3F). On September 14, 2012, the claimant denied having any problems or common symptoms associated with diabetes mellitus (Exhibit 8F, page 1). The medical record in totality indicates that the claimant has good control of diabetes mellitus and blood sugars when he takes medications as prescribed and follows treatment recommendations. When he is not compliant with medication and/or diet he has subjective complaints and high blood sugars (Exhibit 8F). He has not been hospitalized for diabetes mellitus nor has he presented to the emergency room for diabetic emergency.

(Tr. 16-17.) Thus the ALJ concluded that Nexsen's

treatment history provides a reasonable basis for some of the symptoms alleged by the claimant and that his impairments would impose some restrictions in his ability to perform work related activities. However, the totality of his statements regarding his limitations are inconsistent with the objective evidence that does not demonstrate the existence of limitations of such severity as to preclude the claimant from performing any work on a regular and continuing basis. It is for these reasons the claimant is found not fully credible (20 C.F.R. § 404.1529(c)(3), and Social Security Ruling 96-7p).

(Tr. 17.)

Nexsen challenges some of the reasons mentioned by the ALJ. Specifically, he argues that in light of his age, he did not have to demonstrate that he was a "totally disabled person" because he would be entitled to disability even if he could perform sedentary or light work under the Medical-Vocational Guidelines (the "Grids"). Additionally, Nexsen argues that pursuant to SSR 96-7p, the ALJ failed to consider whether Nexsen had a justifiable reason for not receiving the level of treatment that the ALJ expected, such as an inability to afford the treatment. Finally, Nexsen argues that the ALJ failed to consider Nexsen's long work history and his daily activities.



Upon review of the records as a whole and the parties' briefs, the court finds that Nexsen has failed to demonstrate that the ALJ's determination that Nexsen was not entirely credible is unsupported or controlled by an error of law. As stated above, it the ALJ's duty to weigh credibility. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). Additionally, although a claimant should not be "penalized for failing to seek treatment [he] cannot afford," there is no indication in the record that Nexsen was unable to afford his diabetic treatment or that other treatment was prescribed that he could not afford. Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986) (indicating that a claimant for Social Security benefits should not be "penalized for failing to seek treatment [he] cannot afford"); see also SSR 96-7p, 1996 WL 374186, at *7 ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."). In fact, as pointed out by the Commissioner, the record shows that Nexsen received treatment from Dr. Eagerton on a "somewhat regular basis, that Dr. Eagerton ordered various diagnostic tests including metabolic panels and A1c tests (Tr. 219, 247), and that Plaintiff was prescribed—and, apparently, took—various medications for his impairments and acute conditions (Tr. 230, 234, 244, 252, 253)." (Def.'s Br. at 28-29, ECF No. 17 at 28-29.) The Commissioner further points out that the record indicates that although Nexsen reported to Dr. Eagerton that he had no prescription drug coverage



or insurance, on only one occasion, in September 2012, did Nexsen decline a metabolic panel and hemoglobin A1c tests for financial reasons. (See Tr. 244, 245.)  Further, the only actual *medical treatment* that was recommended that Nexsen declined was Dr. Eagerton's recommendation of insulin therapy in February 2012, but the record reveals that Nexsen wished "to try serious exercise and weight reduction to see if he can avoid this."  (Tr. 245.)

Moreover, the ALJ's decision clearly reflects that she considered the relevant factors in weighing Nexsen's credibility.   See 20 C.F.R. § 404.1529(c)(3).   Although the ALJ did not specifically mention Nexsen's daily activities and his work history in the ALJ's analysis of his credibility, these facts were clearly observed by the ALJ in the opinion.  (See Tr. 15 (summarizing Nexsen's testimony of his daily activities); Tr. 18 (mentioning Nexsen's long work history)).

Even if the court were to agree with Nexsen on some of his challenges, the court finds that Nexsen has failed to demonstrate that the ALJ's credibility analysis as a whole is unsupported by substantial evidence or controlled by an error of law.  See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Mickle v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (noting that the absence of ongoing medical treatment can discredit a claimant's allegations); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

## RECOMMENDATION

For the foregoing reasons, the court finds that Nexsen has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 26, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).